IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JEFFREY NORRIS,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF SANFORD et al.,<br><br>Defendants. | ) | 1:24CV1009 |

**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, District Judge.

Plaintiff Jeffrey Norris, proceeding pro se, has brought this action asserting claims pursuant to 42 U.S.C. § 1983 and North Carolina common law. (Docs. 2, 23.) Before the court is the motion to dismiss the amended complaint by Defendants City of Sanford, Officer Michael Woods, Officer Joshua Ellis, Officer A. Villareal, and Officer Nathan Owen Davis pursuant to Federal Rules of Civil Procedure 12(b)(1), (2), and (6). (Doc. 26.) Norris has responded in opposition, and Defendants have replied. (Docs. 31, 34.)

For the reasons set out below, Defendants' motion to dismiss will be granted in part and denied in part.

## I. BACKGROUND

The amended complaint, construed in the light most favorable to Norris as the non-moving party, alleges the following: after leaving a diaper drive on the afternoon of December 16, 2021,

Norris returned to his home to find himself locked out. (Doc. 23 at 2.) He was, by his own admission, "extremely intoxicated" and dropped his infant daughter while "stumbling" off his porch. (Id.) A witness contacted the Sanford Police Department, and officers and emergency medical personnel arrived at Norris's house. (Id.) Norris asserts that he "gave no problems to the officers on the scene" before they transported him, along with his daughter, to Central Carolina Hospital for an evaluation. (Id.)

At the hospital, Norris asked to use the bathroom. (Id.) He urinated on himself while being escorted to the bathroom by Officer Woods. (Id.) At this point, the parties' versions of the incident diverge. According to Norris, Officer Woods "began taunting and name calling" Norris when they reached the bathroom. (Id. ¶ 19.) Officer Woods then asked Norris to pick up his clothing and attempted to place a hospital robe over Norris's head. (Id.) Norris alleges that he feared for his safety because Officer Woods moved. (Id. at 3, ¶ 20.) Norris shrank back in fear and attempted to "protect his face and head," while still "barely able to stand up" because he was intoxicated. (Id.) Officer Woods wrestled Norris while attempting to wrap the robe around Norris's head. (Id. ¶ 20.) The other officers rushed into the bathroom to find Norris "being snatched to the floor" by Officer Woods and began beating Norris while he was on the floor. (Id. at 3.) Norris notes that "there is bodycam footage of this portion of the

incident." (Id.) He maintains that despite Defendants' continuing to beat him, he "did not assault or strike a law enforcement officer" and instead remained compliant. (Id. ¶ 24.) Nevertheless, Norris alleges that the officer Defendants tased him in the head, face, and ankle, and he suffered a broken nose, fractured ribs, and a bruised face. (Id. at 3; Doc. 31 at 3.)

Defendants' version of events differs. In support of their account, Defendants have offered a "body worn camera recording depict[ing] Defendants' encounter with Plaintiff during the incident that is the subject of this lawsuit." (Doc. 28 at 1.)[1] According to Defendants, the video demonstrates that Norris's claims that the officers assaulted him are "entirely inaccurate." (Doc. 27 at 4.) Defendants describe the video as instead showing that Norris lunged at Officer Woods, who "reacted by attempting to block Plaintiff's assault and taking Plaintiff down to the ground." (Id.) The other officer Defendants entered the bathroom to assist Officer Woods in subduing Norris and placing him in handcuffs. (Id.) According to Defendants, the video reflects that "[a]t no point is Plaintiff 'beaten' or 'tased' by the officers." (Id.)

Following the incident, Norris was charged with misdemeanor child abuse and assault on a law enforcement officer. (Id.) The latter charge was dismissed pursuant to a plea deal in which Norris

[1] Defendants have moved to file this recording under seal. (Doc. 28.)

pled guilty to the misdemeanor child abuse charge. (Id.)

The court has previously denied a motion to dismiss by Defendants Ellis and the Sanford Police Department but permitted Norris to amend his complaint. (Doc. 20.) The amended complaint asserts claims against the officer Defendants pursuant to § 1983 for deprivation of his civil rights by malicious prosecution (Count One) and excessive force (Count Two). (Doc. 23 ¶¶ 21-40.) He also asserts claims against all Defendants pursuant to North Carolina common law for false imprisonment (Court Three), intentional infliction of emotional distress ("IIED") (Count Four), assault and battery (Count Five), and negligent execution of official duties (Count Six). (Id. ¶¶ 41-64.) Finally, he asserts a claim against the City of Sanford for negligent hiring, training, and supervision (Count Seven). (Id. ¶¶ 45-69.)

## II. ANALYSIS

### A. Standard of Review

Norris proceeds pro se. Thus, his complaint is "not . . . scrutinized with such technical nicety that a meritorious claim should be defeated." Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978). But the liberal construction of a pro se litigant's filing does not require the court to ignore clear defects in it, Bustos v. Chamberlain, No. 09-1760, 2009 WL 2782238, at *2 (D.S.C. Aug. 27, 2009), or to become an advocate for the pro se party, Weller v. Dep't of Soc. Servs., 901 F.2d 387, 391 (4th Cir. 1990);

see also Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985) (noting that "[d]istrict judges are not mind readers"). Moreover, pro se parties are expected to comply with applicable procedural rules. See Chrisp v. Univ. of N.C.-Chapel Hill, 471 F. Supp. 3d 713, 715-16 (M.D.N.C. 2020) (requiring pro se plaintiff to comply with the Federal Rules of Civil Procedure).

Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Rule 12(b)(6) motion to dismiss is meant to "test[] the sufficiency of a complaint" and not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

In considering a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam), and all reasonable inferences must be drawn in the non-moving party's favor, Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997). However, the court "need not accept as true unwarranted inferences,

unreasonable conclusions, or arguments." E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000). Rule 12(b)(6) protects against meritless litigation by requiring sufficient factual allegations "to raise a right to relief above the speculative level" so as to "nudge[] the[] claims across the line from conceivable to plausible." Twombly, 550 U.S. at 555, 570; see also Iqbal, 556 U.S. at 678. Thus, mere legal conclusions should not be accepted as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

Defendants seek dismissal of all claims pursuant to Rule 12(b)(6). (Doc. 27 at 4.) The City of Sanford also seeks dismissal of the claims against it pursuant to Rules 12(b)(1) and (2), asserting that this court's jurisdiction is precluded by governmental immunity. (Id. at 6.) Before turning to each count, the court addresses consideration of the body worn camera recording submitted with Defendants' motion to dismiss. (See Doc. 26.)

**B. Body Worn Camera Recording**

In support of their motion to dismiss, Defendants have submitted a video recording of footage from Officer Woods's body worn camera, which they contend captures "the incident [Norris] refers to in his Amended Complaint." (Doc. 27 at 3.) They claim not only that "the video shows that [Norris's] version of events is inaccurate" but that it disproves his claims, so Defendants

urge the court to credit the video over Norris's allegations. (Id.) Norris objects to the use of the video at the pleading stage, describing it as "selective, incomplete, and unauthenticated." (Doc. 31 at 4.) Norris also argues that the video "does not clearly contradict [his] allegations." (Id.)

Generally, in ruling on a motion to dismiss, courts may consider extrinsic documents attached to either the complaint or the motion to dismiss without converting the motion into one for summary judgment so long as the documents are "integral to the complaint and authentic." Philips v. Pitt Cnty. Mem. Hosp., 572 F.3d 176, 180 (4th Cir. 2009); see Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 164 (4th Cir. 2016). Video footage of police encounters is subject to a specific inquiry at the motion to dismiss stage. See Doriety for Est. of Crenshaw v. Sletten, 109 F.4th 670, 679 (4th Cir. 2024). "[A] district court can consider a video submitted at the motion to dismiss stage when (1) the video is 'integral' to the complaint and its authenticity is not challenged, but (2) only to the extent that the video 'clearly depicts a set of facts contrary to those alleged in the complaint,' or 'blatantly contradicts' the plaintiff's allegations, rendering the plaintiff's allegations implausible." Id. at 679-80 (quoting Saalim v. Walmart, Inc., 97 F.4th 995, 1002 (6th Cir. 2024)).

**1. Integral and Authentic**

The court may consider the video if it is "'integral' to the

complaint and its authenticity is not challenged." Id. (quoting Saalim, 97 F.4th at 1002). Defendants contend that Norris "referred to and relied on" the video in his complaint. (Doc. 27 at 3 n.1.) They are partially correct: Norris's complaint refers to the video, stating that "there is bodycam footage of this portion of the incident viewed and obtained through court order." (Doc. 23 at 3.) However, Norris did not "rel[y] on" the video. (Id.) His allegations do not depend on its contents or its existence for factual support. Norris merely acknowledges its existence, yet notes that several minutes before its start, "defendant for some reason did not feel the need to turn on his bodycam." (Id. at 2.) Norris's reference to the video, without more, does not justify a finding that it is "integral" to the complaint. See AMA Sys., LLC v. Vonnic, Inc., No. 22-cv-00652, 2022 WL 2161715, at *1 n.1 (D. Md. June 15, 2022) ("A document is not 'integral' to a complaint unless its very existence, not merely its content, is foundational to the complaint."); cf. Williams v. Painter, 791 F. Supp. 3d 696, 704-05 (E.D. Va. 2025) (finding body worn camera footage integral to the complaint where the plaintiff's allegations "could not have been pled together without the use of the [video]").

Furthermore, Norris disputes the video's authenticity. (Doc. 31 at 4.) While his challenge is far from robust, it is true that Defendants have not submitted a declaration to authenticate the

video as true and accurate. See Fed. R. Evid. 901; Fed. R. Evid. 104(b). At the present motion to dismiss stage, Norris's "challenge[]" to the use of the "unauthenticated" video is sufficient, pursuant to Doriety, to prevent a finding that the video's "authenticity is not challenged." See 109 F.4th at 679; see also Linlor v. Polson, 263 F. Supp. 3d 613, 626 & n.4 (E.D. Va. 2017) (finding that even an implausible challenge to a video's authenticity was sufficient to create an "evidentiary issue" that precluded the court from considering it at the motion to dismiss stage).

Because Defendants have not demonstrated that the body worn camera footage is "integral" to Norris's complaint and its authenticity is not challenged, they have not met the threshold requirement for the court to consider it at this stage. See Doriety, 109 F.4th at 679-80.

**2. "Blatantly Contradicts"**

Even if Defendants could be deemed to have met Doriety's first prong, they fail to satisfy its second prong. Courts may consider a video submitted at the motion to dismiss stage "to the extent that the video 'clearly depicts a set of facts contrary to those alleged in the complaint,' or 'blatantly contradicts' the plaintiff's allegations, rendering the plaintiff's allegations implausible." Id. Although Defendants state that Officer Woods's body worn camera footage "blatantly contradicts" Norris's version

of events, they must clear a "high bar" to prevail on the question. (Doc. 27 at 3; see Lewis v. Caraballo, 98 F.4th 521, 529 (4th Cir. 2024); Doriety, 109 F.4th at 679 ("As the phrase 'blatantly contradicts' implies, this standard is a very difficult one to satisfy, and requires that the plaintiff's version be utterly discredited by the video recording." (internal quotations omitted)).) At the summary judgment stage, the Fourth Circuit has distinguished between situations in which a video "blatantly contradicts" a plaintiff's allegations as opposed to merely "offer[ing] some support for [an] officer's version of events." Lewis, 98 F.4th at 529 (quoting Witt v. W. Va. State Police, 633 F.3d 272, 276-77 (4th Cir. 2011)).

Although the video "offers some support" for Defendants' version of events, it does not "render[]" all Norris's allegations "utterly discredited." See Doriety, 109 F.4th at 679-80. For example, Norris states he feared Officer Woods trying to place a hospital robe over his head and reacted to "protect his face and head." (Doc. 23 at 3.) The video begins without sound and shows Norris looking down, then looking up again as the expression on his face changes, then throwing his hands upward toward the top of the frame as a blue hospital robe in Officer Woods's hands comes into view. (Doc. 26, Ex. A.) Norris and Officer Woods wrestle toward the floor, while the blue hospital gown comes in and out of frame. (Id.) The gown intermittently obscures the camera's view.

(Id.) The other officers at some point enter and are visible attempting to help Officer Woods. (Id.) When the scene steadies, Norris is restrained on the ground with blood on his head, his face, and the floor. (Id.) The final fifty seconds of the video show Officer Woods gesturing "thumbs up" as he leaves the bathroom. (Id.) The other officers remain with Norris. (Id.) Officer Woods then walks through the hospital to the nurse's station. (Id.)

The video does not show any of the officer Defendants beating or tasing Norris. (Id.) But neither does the video "utterly discredit[]" or clearly depict a set of facts contrary to Norris's allegations. See Doriety, 109 F.4th at 679. The video does not clearly show the source of Norris's injuries, or what occurred in the bathroom after Officer Woods departed. To be sure, the video offers "some support" for Defendants' "version of events." See Lewis, 98 F.4th at 529. It does not, however, "blatantly contradict[]" Norris's allegations, nor does it "clearly depict[] a set of facts contrary to those alleged in the complaint." See Doriety, 109 F.4th at 679-80. It is "difficult to discern many critical details from the video." See id. at 680. Consequently, the video does not meet the "high bar" required for a finding that it "utterly discredits" Norris's version of events such that the court may consider it at the motion to dismiss stage. See Lewis, 98 F.4th at 529; see also Bermeo v. Andis, 163 F.4th 87, 94-95 (4th Cir. 2025) (holding that the district court erred in

considering a recording at the motion to dismiss stage because the recording did not "blatantly contradict[] the allegations" in the complaint).

Because Defendants' proffered video fails to satisfy either requirement that the Fourth Circuit articulated in Doriety, Defendants have failed to demonstrate that the court should consider it in deciding whether to grant Defendants' motion to dismiss.

**C. Section 1983 Claims**

Norris presses claims against the officer Defendants pursuant to § 1983, alleging deprivation of his civil rights by malicious prosecution (Count One) and excessive force (Count Two). (Doc. 23 ¶¶ 21-40.) In response, the officer Defendants assert qualified immunity. (Doc. 27 at 7-8.) Qualified immunity shields government officials performing discretionary functions from personal liability for civil damages under § 1983, so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Ridpath v. Bd. of Governors Marshall Univ., 447 F.3d 292, 306 (4th Cir. 2006) (quoting Wilson v. Layne, 526 U.S. 603, 609 (1999)). Officials are entitled to immunity unless the § 1983 claim satisfies a two-prong test: (1) the allegations, if true, substantiate a violation of a federal statutory or constitutional right, and (2) the right was "clearly established" such that a reasonable official would

have known his acts or omissions violated that right. Id.; Hope v. Pelzer, 536 U.S. 730, 739 (2002). The court may consider the prongs in either order, as a plaintiff's failure to satisfy either entitles the officer to immunity. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

The court will consider Defendants' assertion of qualified immunity in response to each of Norris's § 1983 claims in turn.

**1. Malicious Prosecution (Count One)**

Defendants argue that Norris has failed to allege a violation of his federal rights against malicious prosecution, because he can establish neither a lack of probable cause nor that criminal proceedings terminated in his favor. (Doc. 27 at 9-10.) They point to the grand jury indictments for misdemeanor child abuse and assault on a law enforcement officer as evidence that the charges against him were supported by probable cause. (Id.) In response, Norris claims that his allegation that the assault charge was fabricated renders the grand jury indictment insufficient to show probable cause for his arrest, charge, and prosecution for assault. (Doc. 31 at 5.)

"A 'malicious prosecution claim under § 1983 is properly understood as a Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort.'" Evans v. Chalmers, 703 F.3d 636, 647 (4th Cir. 2012) (quoting Lambert v. Williams, 223 F.3d 257, 261 (4th Cir. 2000)). To state

a claim for malicious prosecution under § 1983, "a plaintiff must allege that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." Evans, 703 F.3d at 647.

#### a. Probable Cause

"For probable cause to exist, there need only be enough evidence to warrant the belief of a reasonable officer that an offense has been or is being committed; evidence sufficient to convict is not required." Brown v. Gilmore, 278 F.3d 362, 367 (4th Cir. 2002). In support of their contention that Norris's arrest was supported by probable cause, Defendants point to grand jury indictments for both the misdemeanor child abuse and the assault charges. (Doc. 27 at 10.)[2] As Defendants note, "an indictment, fair upon its face, returned by a properly constituted

[2] Defendants have filed copies of both indictments. (Doc. 26-2 at 1-3; Doc. 26-3 at 1-3.) "The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); see also, Papasan v. Allain, 478 U.S. 265, 268 n.1 (1986) ("Although this case comes to us on a motion to dismiss . . . we are not precluded in our review of the complaint from taking notice of items in the public record . . . ."). The Fourth Circuit routinely takes judicial notice of court records, including indictments. See, e.g., United States v. Kane, 434 F. App'x 175, 176 (4th Cir. 2011) (taking judicial notice of an indictment charging the defendant with burglaries); Lolavar v. de Santibanes, 430 F.3d 221, 224 n.2 (4th Cir. 2005) (taking judicial notice of court records); Colonial Penn. Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir. 1989) (taking judicial notice, in a subsequent civil case, of defendants' guilty pleas in the related criminal prosecution for arson). Norris has not challenged the authenticity of the indictments. The court therefore takes judicial notice of them.

grand jury, conclusively determines the existence of probable cause." (Id. at 9 (quoting Durham v. Horner, 690 F.3d 183, 189 (4th Cir. 2012) (quoting Gerstein v. Pugh, 420 U.S. 103, 117 n.19 (1975)).)

However, as Norris points out, the Fourth Circuit's "precedents instruct that 'a grand jury's decision to indict . . . will [not] shield a police officer who deliberately supplied misleading information that influenced the decision.'" Durham, 690 F.3d at 189 (quoting Goodwin v. Metts, 885 F.2d 157, 162 (4th Cir. 1989)). In Durham v. Horner, the Fourth Circuit upheld the district court's grant of summary judgment in favor of a deputy sheriff who was alleged to have initiated a prosecution without probable cause. 690 F.3d at 190. The plaintiff alleged that the deputy's reliance on "unverified information" to establish his identity resulted in his mistakenly being indicted on drug charges, violating his right to be free from malicious prosecution. Id. at 188. The court found that "the prosecution was plainly supported by probable cause, as conclusively established by the three [grand jury] indictments." Id. at 189. In rejecting the plaintiff's argument that "unverified information" from the deputy "tainted the grand jury process," the court noted that the deputy in question "did not even testify" before the grand jury, and therefore "could not have been the instrument of its misapprehension." Id. at 189. Norris's

indictment does not indicate that any of the Defendant officers testified before the grand jury. (See Doc. 26-3 at 3 (listing the sole grand jury witness as "Det. G. Parker-SPD").)

Nevertheless, Durham is distinct in two important respects. First, unlike the plaintiff in Durham, Norris is not alleging a mistake made in "good faith in accord with the information available." See 690 F.3d at 187. Rather, he alleges that the officers acted "in bad faith" and argues that "Officer Woods fabricated the assault-on-an-officer allegation to justify the force used against him." (Doc. 23 at 7; Doc. 31 at 5 (emphasis added).) The Fourth Circuit has recognized an "exception" to the rule that a grand jury indictment conclusively establishes probable cause, applicable "when an officer 'mislead or pressured the prosecution.'" Harris v. Town of S. Pines, 110 F.4th 633, 643 (4th Cir. 2024). Second, unlike in Durham, where the court considered a grant of summary judgment, Defendants here have moved to dismiss. Thus, the court "must accept as true all of the factual allegations contained in the complaint," Erickson, 551 U.S. at 94, and all reasonable inferences must be draw in Norris's favor, see Ibarra, 120 F.3d at 474.

At the motion to dismiss stage, Norris has plausibly alleged that the grand jury indictments to which Defendants point in support of probable cause were the product of "mislead[ing]" information. (See Harris, 110 F.4th at 643; Doc. 23 ¶¶ 21-28;

Doc. 31 at 5.) Specifically, Norris alleges that he "did not assault or strike a law enforcement officer, and charges brought against [him] . . . was with ill will and intent to harm him." (Doc. 23 ¶ 24.) He argues based on this allegation that Defendants "falsely accused him of assaulting an officer to justify their use of force." (Doc. 31 at 6.) Despite the lack of specific allegations that Defendant officers testified before the grand jury, Norris has sufficiently alleged that the grand jury indictment does not conclusively establish probable cause, because he has alleged that the assault charge against him was "fabricated." (Doc. 31 at 6; see Harris, 110 F.4th at 643-44 (finding that grand jury indictments did not supply proof of probable cause where law enforcement officers' "omission[] [of exculpatory evidence] misled prosecutors" seeking the indictments); see also Shaw v. Town of Mint Hill, No. 23-cv-624, 2024 WL 2162891, at *6 (W.D.N.C. May 14, 2024) (finding, "[u]nder the deferential motion to dismiss standard," that the plaintiff's allegations that defendants fabricated evidence of probable cause were sufficient "to show that grand jury indictments in this case should not be taken as conclusive evidence of probable cause").)

In their reply, Defendants point to the body camera footage as establishing "probable cause for the assault charge, as [Norris] is clearly seen lunging at and attacking Officer Woods." (Doc. 34 at 3.) As established above however, not only has Norris

challenged the video's authenticity, the video does not blatantly contradict Norris's claim because it leaves "critical details" of the encounter "difficult to discern." See Doriety, 109 F.4th at 680. For example, although the video does not show the officer Defendants beating or tasing Norris, neither does it fully refute this possibility. (See Doc. 26, Ex. A.) The camera's view does not capture the entirety of the officers taking Norris to the ground, nor does the video show the source of his injuries. (Id.) Additionally, Officer Woods, wearing the camera, leaves the bathroom during the final fifty seconds of the video, leaving Norris off camera with the remaining officer Defendants. (Id.) Thus, while the court does not consider the body camera footage in reaching its decision on Defendants' motion to dismiss, it would not help Defendants anyway to provide a basis for a finding of probable cause for the assault charge.

Consequently, at the motion to dismiss stage, Norris has plausibly alleged that he was seized "pursuant to legal process unsupported by probable cause." See Evans, 703 F.3d at 647.

**b. Favorable Termination**

Defendants next argue that Norris has not plausibly alleged that the criminal proceedings against him terminated in his favor, because the charges against him were dismissed pursuant to a plea agreement in which Norris pled guilty to the misdemeanor child

abuse charge. (Doc. 27 at 10; see Evans, 703 F.3d at 647.)[3] Norris argues that his allegation that the prosecution ended without a conviction satisfies the favorable termination element of the malicious prosecution claim, because he did not plead guilty to or admit guilt in connection with the assault charge. (Doc. 31 at 6.) In reply, Defendants assert that where charges are dismissed pursuant to a plea deal, the dismissal "does not constitute favorable termination supporting a malicious prosecution claim." (Doc. 34 at 3.)

The Supreme Court has recently addressed the favorable termination requirement of a malicious prosecution claim. Thompson v. Clark, 596 U.S. 36 (2022). In Thompson, the prosecution had, without explanation, moved to dismiss criminal charges against the plaintiff prior to trial. Id. at 40. The Court noted that case law in the circuits was divided, with some courts requiring a plaintiff to demonstrate favorable termination with a showing of "some affirmative indication of his innocence," while others required only that a prosecution "ended without a conviction." Id. at 41, 45. The Court therefore considered

[3] Defendants have filed a copy of the plea agreement. (Doc. 26-4 at 1-4). As noted above, the Fourth Circuit routinely takes judicial notice of court records. See, e.g., Kane, 434 F. App'x at 176; Lolavar, 430 F.3d at 224 n.2; Colonial Penn., 887 F.2d at 1239 (taking judicial notice, in a subsequent civil case, of defendants' guilty pleas in the related criminal prosecution for arson). Norris has not challenged the authenticity of the plea agreement. The court therefore takes judicial notice of it.

whether a plaintiff needed to show an affirmative indication of innocence or simply that the prosecution ended without a conviction. Id. The Court held that "a Fourth Amendment claim under § 1983 for malicious prosecution does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence." Id. at 49. Rather, "[a] plaintiff need only show that the criminal prosecution ended without a conviction." Id.

In support of their argument that the termination of a criminal prosecution pursuant to a plea deal does not constitute a favorable termination for purposes of a malicious prosecution claim, Defendants cite Fourth Circuit and district court precedent to that effect. (Doc. 27 at 10 (citing, for example, Tucker v. Duncan, 499 F.2d 963, 965 (4th Cir. 1974); Allen v. City of Dunn, 708 F. Supp. 3d 743, 753 (E.D.N.C. 2023)).) Prior to the Supreme Court's decision in Thompson, the Fourth Circuit held that "the favorable termination element . . . is satisfied when the 'criminal case against the plaintiff has been disposed of in a way that indicates the plaintiff['] s innocence.'" Salley v. Myers, 971 F.3d 308, 313 (4th Cir. 2020) (quoting Snider v. Seung Lee, 584 F.3d 193, 202 (4th Cir. 2009) (Stamp, J., concurring)), overruled in part by, Thompson, 596 U.S. 36 (2022). Flowing from this requirement, the Fourth Circuit has historically held that the dismissal of charges pursuant to a plea bargain does not

satisfy the favorable termination requirement. See, e.g., Tucker, 499 F.2d at 965 ("'Where a [nolle prosequi] is entered by the procurement of the party prosecuted, or by his consent or by compromise, such party cannot have an action for malicious prosecution.'" (quoting Langford v. Bos. & A.R. Co., 11 N.E. 697, 699 (Mass. 1887))); Allen, 708 F. Supp. 3d at 753 (citing Tucker, 499 F.2d at 965)). Since the Supreme Court's decision in Thompson, the Fourth Circuit has not examined whether this precedent concerning plea bargains survives Thompson's holding. See Cooper v. City of Wheeling, 169 F.4th 220, 227 (4th Cir. 2026) (citing Thompson in a discussion of whether a claim under § 1983 was time barred); Brunson v. Stein, 116 F.4th 301, 308-09 (4th Cir. 2024) (citing Thompson in a discussion of the favorable termination requirement in Heck v. Humphrey). A Supreme Court decision overrules or abrogates prior Fourth Circuit precedent only if the precedent is "'impossible to reconcile' with a subsequent Supreme Court decision." Short v. Hartman, 87 F.4th 593, 605 (4th Cir. 2023) (quoting Carrera v. E.M.D. Sales Inc., 75 F.4th 345, 352 (4th Cir 2023)).[4]

[4] Two circuits following similar precedents on favorable termination have not found those precedents inharmonious with Thompson. See Carruthers v. Colton, 153 F.4th 169, 186-87 (2d Cir. 2025) (considering Thompson and holding that a compromised dismissal pursuant to a plea bargain presents a distinct issue and does not constitute favorable termination because it involves a "calculated decision" by the prosecution, which necessarily provides an explanation for the decision to drop charges, and because "[a] conclusion to the contrary would threaten to disturb the incentive structures underlying plea agreements and the purpose of

Defendants do not address Thompson in their briefing. (See Doc. 27; Doc. 34.) Thompson has placed the law in the Fourth Circuit in question. See, e.g., Grace v. Alamance Cnty., No. 20-cv-2024, 2024 WL 2159863, at *6 n.1 (M.D.N.C. Jan. 16, 2024) ("The Police Defendants argued in their initial brief that Plaintiff could not meet the favorable termination element because the law required a termination that indicates a plaintiff's innocence, which Plaintiff's plea bargains did not. This was the law in the Fourth Circuit at the time. . . . However, following briefing in this case, the United States Supreme Court held in Thompson that a more expansive definition of favorable termination applied." (citation omitted)); McAllister v. Winston-Salem Police Dep't, No. 19-cv-13, 2023 WL 2239474, at *8 n.7 (M.D.N.C. Feb. 27, 2023) ("Defendants continue to rely upon the argument that 'Plaintiff's compromise resolution of the relevant criminal proceedings against him did not in any way indicate or suggest that Plaintiff was innocent of the charges.' . . . But '[t]o demonstrate a favorable termination of a criminal prosecution for purposes of [a] Fourth Amendment claim under § 1983 for malicious prosecution, a plaintiff need only show that his prosecution ended without a conviction.' . . . Plaintiffs need not 'show that the criminal

---

the favorable termination rule"); Davis v. Warren, 173 F.4th 566, 573 & n.23 (5th Cir. 2026) (citing Thompson in a footnote but concluding that "[a] bargained-for conviction . . . is not favorable termination").

prosecution ended with some affirmative indication of innocence.'" (citations omitted)). Defendants have not addressed Thompson's impact on whether a dismissal pursuant to a plea bargain satisfies the favorable termination requirement. Thus, the court is unable to conclude that Defendants have refuted Norris's allegation of favorable termination. Accordingly, Defendants have not demonstrated that Norris has insufficiently alleged that they deprived him of his constitutional rights against malicious prosecution.

**2. Excessive Force (Count Two)**

Defendants argue that their conduct toward Norris was objectively reasonable, and therefore did not constitute excessive force, because Norris had assaulted an officer, posed a danger to the officers, and was resisting. (Doc. 27 at 12-13.) Defendants further argue that the maneuver they used in taking Norris to the ground "is the type of force routinely upheld by courts in similar circumstances." (Id. at 13.) In response, Norris contends that he did not assault Officer Woods, that he posed no danger to officers, that he was not resisting, and that any movements he made were "involuntary or reflexive." (Doc. 31 at 4.)

Excessive force claims against law enforcement officers are analyzed under the Fourth Amendment's reasonableness standard. Graham v. Connor, 490 U.S. 386, 395 (1989). The question under the totality of circumstances is "whether a reasonable officer in

the same circumstances would have concluded that a threat existed justifying the particular use of force." Anderson v. Russell, 247 F.3d 125, 129 (4th Cir. 2001). In determining whether a reasonable officer on the scene would have used force, courts consider three factors: "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396. "[T]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. Courts must consider "that police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving." Elliot v. Leavitt, 99 F.3d 640, 642 (4th Cir. 1996). Nevertheless, "force justified at the beginning of an encounter is not justified even seconds later if the justification for the initial force has been eliminated." Waterman v. Batton, 393 F. 3d 471, 481 (4th Cir. 2005) ("To simply view all of the force employed in light of only the information possessed by the officer when he began to employ force would limit, for no good reason, the relevant circumstances to be considered in judging the constitutionality of the officer's actions.").

Defendants assert that all three of the Graham factors weigh in their favor, such that Norris has not plausibly pled that the

officers' conduct constituted excessive force. (Doc. 27 at 11-13; see Graham, 490 U.S. at 396.) First, as to the severity of the crime, Defendants point to the body camera footage as reflecting that Norris assaulted Officer Woods, a serious crime that "weighs in favor of the officer using force in response." (Doc. 27 at 12.) However, Norris has alleged that he did not assault Officer Woods but instead reacted in fear and attempted to protect himself. (Doc. 23 at 3.) At the motion to dismiss stage, the court must accept Norris's factual allegations as true and, as established above, does not consider Defendants' proffered body camera footage. See Erickson, 551 U.S. at 94; Doriety, 109 F.4th at 679-80. Defendants have therefore not shown that the first Graham factor weighs in their favor.

Next, Defendants argue under the second Graham factor that Norris posed a danger to the officers because he lunged at and struck Officer Woods in the face. Doc. 27 at 12.) Norris asserts that he did neither. (Doc. 23 at 3.) Here, Defendants point to the grand jury bill of indictment as indicating that Norris struck Officer Woods. (Doc. 27 at 12.) The indictment charges Norris with "striking [Officer Woods] in the face, resulting in a scratch to Officer Woods [sic] nose." (Doc. 26-3 at 3.) Aside from Norris's allegation that the indictment is predicated on misleading information, it fails to establish conclusively that whatever danger Norris posed justified the force he alleges. No

doubt the officer Defendants are tasked with making "split-second judgments" in "tense, uncertain, and rapidly evolving" circumstances. Graham, 490 U.S. at 397. But here Norris alleges he was subjected to treatment that caused injuries out of proportion to the scratch on the nose Officer Woods allegedly sustained.

Assuming for the sake of argument that Norris initially struck Officer Woods and scratched his nose, Norris alleges that he did not resist in the ensuing struggle and that "any movements were involuntary." (Doc. 26-3 at 3; Doc. 31 at 4.) Norris's argument that "involuntary" movements do not justify the use of force in response is, on its own, unavailing. The touchstone for whether a use of force is justified is not the suspect's intention, but "whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force." Anderson, 247 F.3d at 129. Consequently, even involuntary movements can justify an officer's belief that a suspect posed a danger, in turn justifying the use of force, particularly if the involuntary movements constitute noncompliance. See Folse v. W. Va. Univ., No. 19-cv-00488, 2019 WL 5295695, at *4 (S.D. W. Va. Sept. 27, 2019) ("[T]he relevant case law generally permits use of force in order to restrain an uncooperative individual."); Est. of Armstrong v. Pinehurst, 810 F.3d 892, 901 (4th Cir. 2016) ("Noncompliance with lawful orders justifies some use of

force[.]”). However, Norris further alleges that Defendants continued to beat and tase him “while he was on the ground” and restrained in handcuffs, thus no longer posing a threat. (Doc. 23 at 3.) Norris's allegations are sufficient at the motion to dismiss stage to overcome Defendants' contention that the second Graham factor weighs in their favor. (See Doc. 31 at 4; Graham, 490 U.S. at 396; Waterman, 393 F.3d at 481 (“[F]orce justified at the beginning of an encounter is not justified even seconds later if the justification for the initial force has been eliminated.”).) And even if the court were to consider the body camera video, there are gaps and obstructions in the viewing such that it does not blatantly contradict Norris's allegations.

Finally, Defendants argue under the third Graham factor that, although Norris was already under arrest, his striking Officer Woods “is a clear form of resistance” that would justify a reasonable officer's use of force in response. (Doc. 27 at 13.) Norris argues that he was not resisting and “any movements were involuntary.” (Doc. 31 at 4.) As discussed above, that an individual's movements were “involuntary” does not alone refute the justification for an officer's use of force. However, “[t]o ‘resist' arrest, a suspect must do more than ‘naturally respond to the physical nature of the arrest.'” Evans v. City of Lynchburg, 823 F. Supp. 3d 596, 610 (W.D. Va. 2026) (quoting Lewis, 98 F.4th at 531). Consequently, Norris's allegation that his movements,

involuntary or otherwise, were in "tr[ying] to protect his face and head" because he "feared [for] his safety," while perhaps suspect, suffices at the motion to dismiss stage for the third Graham factor not to weigh in Defendants' favor. (Doc. 23 at 3.)

Defendants' additional argument – that the maneuver they used to take Norris to the ground is routinely upheld – is likewise unavailing in light of Norris's factual allegations. (See Doc. 27 at 13 (citing Redding v. Boulware, 501 F. App'x 238, 242-43 (4th Cir. 2012).) Norris alleges that the officers used force not merely incident to the officers bringing him to the ground. (See Doc. 23 at 3.) At the motion to dismiss stage, the court must credit those allegations. See Erickson, 551 U.S. at 94. Thus, Norris has sufficiently alleged that Defendants violated his Fourth Amendment right against excessive force.

### 3. Clearly Established Constitutional Rights

Defendants argue that Norris has not alleged violations of rights that were clearly established, because a reasonable officer would have no reason to believe that the use of force to restrain "an intoxicated and belligerent individual who had just lunged at an officer and struck him in the face" would violate Norris's rights. (Doc. 27 at 14.) In response, Norris argues that Fourth Circuit precedent establishes that significant force is unreasonable when the underlying offense is minor, or when the suspect poses no immediate threat or is not resisting. (Doc. 31

at 4 (citing Smith v. Ray, 781 F.3d 95, 103 (4th Cir. 2015); Jones v. Buchanan, 325 F.3d 520, 528-29 (4th Cir. 2003); Harris v. Pittman, 927 F.3d 266, 276 (4th Cir. 2019); Armstrong, 810 F.3d at 907).) Defendants reply by pointing to factual distinctions between the cases that Norris cites and the events in question, when Norris "was intoxicated and lunged at an officer before being taken to the ground and handcuffed, as established by the body camera footage." (Doc. 34 at 7.) Defendants' arguments concerning the "clearly established" prong of the qualified immunity inquiry all relate to Norris's excessive force claim; Defendants make no arguments concerning whether Norris's rights against malicious prosecution are clearly established. (See generally Doc. 27; Doc. 34.)

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) (cleaned up). However, it is not necessary that the precise "action in question has previously been held unlawful." Anderson v. Creighton, 483 U.S. 635, 640 (1987). Rather, "in light of pre-existing law the unlawfulness must be apparent." Id. An officer has a right to fair notice of the unlawfulness of the conduct. Hope, 536 U.S. at 739. The Fourth Circuit applies a split burden of proof for claims

of qualified immunity. The plaintiff bears the burden of showing a violation of his rights, while the defendant bears the burden of proving the right was not clearly established. Stanton v. Elliot, 25 F.4th 227, 233 (4th Cir. 2022); Garrett v. Clarke, 74 F.4th 579, 584 (4th Cir. 2023) ("While 'a case directly on point' is not necessary for a right to be clearly established, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" (quoting White v. Pauly, 580 U.S. 73, 79 (2017) (per curiam))).

In response to Norris's argument that Fourth Circuit precedent clearly establishes that police officers may not use significant force against a non-threatening, non-resisting individual, Defendants correctly point out that in determining whether a right is clearly established, the court is "not to define clearly established law at a high level of generality." Byers v. Painter, 173 F.4th 155, 165 (4th Cir. 2026) (quoting Kisela v. Hughes, 584 U.S. 100, 104 (2023)). Rather, the inquiry must be "'particularized' to the facts of the case at hand." (Doc. 34 at 5 (quoting White v. Pauly, 580 U.S. 73, 79 (2017)).) Here, the court "accept[s] as true all of the factual allegations contained in the complaint." Erickson, 551 U.S. at 94.

Norris alleges that Defendants reacted with disproportionate force to his attempt to prevent Officer Woods from placing a hospital robe over his head. (Doc. 23 at 6-7.) In particular,

Norris's complaint alleges that as he "tried to protect his face and head," Defendants took him to the ground, and then continued to "beat him" when he posed no threat, "tasing him . . . while he was on the ground, breaking his nose, fracturing ribs, [and] blackening his eyes." (Id. at 3.) Defendants assert that Norris "lunged at an officer before being taken to the ground and handcuffed," and that he "can cite to no analogous case which would clearly establish that such a use of force was excessive." (Doc. 34 at 7-8.) But Norris is not obliged at this stage of the litigation to point to case law establishing that his rights against excessive force and malicious prosecution are clearly established; rather, it is Defendants' burden to show that the rights were not clearly established. See Stanton, 25 F.4th at 233; Garrett, 74 F.4th at 584.

Taking Norris's allegations as true, he has plausibly alleged that the officer Defendants engaged in conduct that violated his clearly established constitutional rights against excessive force. And even if the body camera video were considered, for the reasons noted, it does not blatantly contradict Norris's allegations. There are portions of the encounter that are either obscured or not viewable on the video such that one cannot determine what any officer Defendant either did or did not do. Though there is no obvious tasing of Norris during the portion of the encounter that appears on the video, Norris's allegation to that effect is not

blatantly contradicted. See Armstrong, 810 F.3d at 909-10 (holding that the use of a taser on a suspect who does not pose an immediate safety risk is excessive force).

Defendants have also not contested that Norris's rights against malicious prosecution are clearly established. Thus, Defendants' motion to dismiss Norris's claims pursuant to § 1983 for malicious prosecution (Count One) and excessive force (Count Two) is denied.

**D. False Imprisonment (Count Three)**

In opposition to Norris's claim of false imprisonment pursuant to North Carolina common law, Defendants argue that because they had probable cause to place Norris in custody for misdemeanor child abuse, Norris cannot establish a claim of false imprisonment. (Doc. 27 at 14-15.) In response, Norris presses his claim that the assault on an officer charge was fabricated, and thus his detention amounted to false imprisonment. (Doc. 31 at 7.) "False imprisonment is the illegal restraint of the person of any one against his will." State v. Lunsford, 81 N.C. 528, 530 (N.C. 1879). In North Carolina, a claim of false imprisonment requires the plaintiff to establish: "(1) the illegal restraint of plaintiff by defendant, (2) by force or implied threat of force, and (3) [accomplished] against the plaintiff's will." Rousselo v. Starling, 495 S.E.2d 725, 732 (N.C. Ct. App. 1998) (citing Fowler v. Valencourt, 435 S.E.2d 530, 532 (N.C. 1993)).

Norris has alleged that during the altercation in the hospital bathroom, Defendants restrained him by force and against his will, establishing the second and third elements of a claim of false imprisonment. (Doc. 23 at 10.) The remaining question is whether Defendants' use of force to restrain Norris was "illegal." See Rousselo, 495 S.E.2d at 732. Norris argues that because he did not assault Officer Woods, Defendants' actions restraining him in response constituted illegal restraint. (Doc. 23 at 10; Doc. 31 at 7.) He contends that his guilty plea "to an unrelated offense . . . does not retroactively legalize detention based on a false charge." (Doc. 31 at 7.) Defendants argue that the existence of probable cause to arrest Norris, along with his guilty plea to misdemeanor child abuse, render their restraint legal. (Doc. 27 at 14-15.)

Defendants' arguments rely on a broad conception of their restraint of Norris: namely, his entire detention following the incident on his porch. (See id.) Norris's arguments, by contrast, attempt to constrain the analysis of his claim only to the restraint during the bathroom altercation. (See Doc. 23 at 10; Doc. 31 at 7.) Defendants hold the correct view. They had probable cause to place Norris in custody for misdemeanor child abuse and therefore did not illegally restrain him. See Cherry v. United Parcel Serv., Inc., No. 5:07-cv-403, 2009 WL 8641019, at *12 (E.D.N.C. Sept. 28, 2009) (holding that "a finding of probable

cause bars a finding of illegal restraint" in a claim for false imprisonment). Accordingly, Defendants' motion to dismiss Norris's claim for false imprisonment (Count Three) will be granted.

**E. IIED (Count Four)**

Defendants argue that Norris has failed to state a claim for IIED because he has not alleged that their conduct was "extreme and outrageous" or that he suffered any actual emotional distress. (Doc. 27 at 15.) In response, Norris points to his allegations that Defendants struck, kicked, and tased him and that they fabricated a criminal charge as adequately alleging extreme and outrageous conduct. (Doc. 31 at 7.) Norris also points to his contentions that he suffers "ongoing trauma, humiliation, fear for his bodily security, and continuing emotional harm" as adequate allegations of severe emotional distress. (Id.) Defendants reply that the body camera footage refutes Norris's allegations. (Doc. 34 at 4.) Defendants also contend that Norris's failure to "present evidence linking defendants' conduct to a 'severe and disabling emotional or mental condition'" warrants dismissal. (Id. (quoting Waddle v. Sparks, 414 S.E.2d 22, 28 (N.C. 1992)).)

Under North Carolina law, the essential elements of an IIED claim are "(1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress to another." Dickens v. Puryear, 276 S.E.2d 325, 335 (N.C. 1981).

IIED may also "exist where defendant's actions indicate a reckless indifference to the likelihood that they will cause severe emotional distress." Id. "The determination whether conduct rises to the level of extreme and outrageous behavior is a question of law." Foster v. Crandell, 638 S.E.2d 526, 537 (N.C. Ct. App. 2007). To be extreme and outrageous, conduct must "go beyond all possible bounds of decency, and . . . be regarded as atrocious, and utterly intolerable in a civilized community." Smith-Price v. Charter Behav. Health Sys., 595 S.E.2d 778, 782 (N.C. Ct. App. 2004) (internal quotation marks and citation omitted).

First, Norris contends that "North Carolina courts recognize that police brutality, physical violence, and fabrication of charges constitute extreme and outrageous conduct." (Doc. 31 at 7.) He cites no cases in support of this statement. Because Norris does not allege that Defendants' fabrication of the assault charge was the cause of his severe emotional distress, the court looks only to his allegations of "police brutality" and "physical violence" to determine whether he has pled extreme and outrageous conduct. See Dickins, 276 S.E.2d at 335 (requiring a causal connection between the purported extreme and outrageous conduct and the severe emotional distress). North Carolina courts have set a high threshold for this standard. See Dobson v. Harris, 521 S.E.2d 710, 715 (N.C. Ct. App. 1999) (finding an exaggerated report of child abuse to the Department of Social Services not extreme

and outrageous), rev'd on other grounds, 530 S.E.2d 829 (N.C. 2000); Hogan v. Forsyth Country Club Co., 340 S.E.2d 116, 121, 123 (N.C. Ct. App. 1986) (finding that requiring pregnant employee to carry heavy loads and refusing to allow her leave to go to the hospital was not extreme and outrageous conduct).

North Carolina law recognizes excessive and unjustified force by police officers as extreme and outrageous conduct for the purpose of an IIED claim. See Pruett v. Town of Spindale, 162 F. Supp. 2d 442, 447 (W.D.N.C. 2001) (finding that plaintiff had sufficiently alleged extreme and outrageous conduct where "excessive force was used in his arrest and . . . he was beaten in such a manner as to cause permanent physical damage"); Wardlow v. Reyes, No. 1:22-cv-416, 2024 WL 1935908, at *15 (M.D.N.C. May 1, 2024) (finding that plaintiff has sufficiently alleged extreme and outrageous conduct where a police officer "deliberately broke Plaintiff's knee, causing him permanent injury, and then held it in such a position as to increase Plaintiff's pain"); Mosk v. Gaston Cnty., No. 17-cv-00177, 2018 WL 1566339, at *8 (W.D.N.C. Mar. 30, 2018) (finding that plaintiff's allegations that "four officers assaulted and battered him and caused him severe injuries consisting of torn ligaments, damaged and bulging discs, and various soft tissue injuries . . . plausibly rises to the level" of extreme and outrageous conduct); Gamble v. Barnette, No. 06-cv-104, 2007 WL 2003418, at *8 (W.D.N.C. July 5, 2007) (finding

that plaintiff sufficiently pled extreme and outrageous conduct where police officer "handcuffed Plaintiff and arrested him without probable cause"). Norris has not alleged permanent physical damage, but he has alleged that Defendants, without justification, "violently forced him to the ground, struck him, deployed a Taser directly into his face and again into his ankle, broke his nose, and continued to assault and humiliate him." (Doc. 31 at 7.) These allegations plausibly allege, at the motion to dismiss stage, extreme and outrageous conduct. See Pruett, 162 F. Supp. at 447; Wardlow, 2024 WL 1935908, at *15; Mosk, 2018 WL 1566339, at *8; Gamble, 2007 WL 2003418, at *8. Moreover, the body camera video, even if it were considered, does not blatantly contradict his allegations in so far as he claims he was violently forced to the ground, struck, tased, suffered a broken nose, and assaulted. There are just too many gaps or obstructions in the video for Defendants to carry their burden at this stage.

Next, Norris must allege causation. He asserts that Defendants' use of "excessive force" "cause[d] [him] to suffer severe emotional distress, including, but not limited to degradation, apprehension for bodily security, and other mental and emotional harms which continue . . . and are likely to continue into the future." (Doc. 23 ¶¶ 44, 46.) Although Norris does allege that Defendants fabricated the assault charge against him, his allegations of severe emotional distress are all causally

connected to Defendants' alleged use of excessive force. (See Doc. 23 ¶¶ 43-47.)

Finally, Norris's allegations of severe emotional distress, contrary to Defendants' contention, are sufficient at the motion to dismiss stage to satisfy the third element of an IIED claim. Defendants contend that Waddle v. Sparks supports their argument that Norris "must present evidence linking defendants' conduct to a 'severe and disabling emotional or mental condition.'" (See Doc. 34 at 4 (quoting Waddle, 414 S.E.2d at 28).) However, in Waddle, the North Carolina Supreme Court was reviewing the lower court's decision on a motion for summary judgment. 414 S.E.2d at 28. At the motion to dismiss stage, Norris is required merely to plausibly plead the elements of his claims. See Twombly, 550 U.S. at 555, 570; Iqbal, 556 U.S. at 678. His allegations of "severe emotional distress, including . . . degradation, apprehension for his bodily security, and other mental and emotional harms" are sufficient at this stage to do so. (See Doc. 23 ¶ 46.)

Thus, Norris has made sufficient allegations to state a claim for IIED, and Defendants' motion to dismiss as to Count Four will be denied.

**F. Assault and Battery (Count Five)**

Defendants next argue that Norris's claim for assault and battery fails for the same reasons as his claim pursuant to § 1983 alleging excessive force. (Doc. 27 at 16; Doc. 34 at 4.) Norris

does not dispute that his assault and battery claims "rise or fall" with his excessive force claim and argues that the claim should not be dismissed because he has sufficiently pled a § 1983 excessive force claim. (Doc. 31 at 8.) Because the parties agree that the excessive force and assault and battery claims rise and fall together, and because Norris has sufficiently pled excessive force pursuant to § 1983, Defendants' motion to dismiss Norris's claim for assault and battery (Count Five) will be denied.

**G. Public Official Immunity**

In opposition to Norris's state law claims for false imprisonment (Count Three), IIED (Count Four), assault and battery (Count Five), and negligent execution of official duties (Count Six), Defendant officers assert that they are entitled to public official immunity. (Doc. 27 at 17; Doc. 34 at 8.) They argue Norris has not adequately alleged that the officers acted with malice or corruption or outside the scope of their authority. (Doc. 27 at 18.) Norris does not specifically contest or respond to Defendants' assertion of public official immunity but makes allegations throughout his complaint (Doc. 23) and response (Doc. 31) that are relevant to the question. In reply, Defendants urge the court to find, pursuant to Local Rule 7.3(k), that Norris's failure to respond specifically to their assertion of public official immunity constitutes concession. (Doc. 34 at 8.)

In North Carolina, the doctrine of public official immunity

"protects public officials from individual liability for negligence in the performance of their governmental or discretionary duties." Campbell v. Anderson, 576 S.E.2d 726, 730 (N.C. Ct. App. 2003). Police officers are public officials who "enjoy absolute immunity from personal liability for their discretionary acts done without corruption or malice." Schlossberg v. Goins, 540 S.E.2d 49, 56 (N.C. Ct. App. 2000). A public official is entitled to immunity from suit in his individual capacity unless he "engaged in discretionary actions which were allegedly: (1) corrupt; (2) malicious; (3) outside of and beyond the scope of his duties; (4) in bad faith; or (5) willful and deliberate." Smith v. Jackson Cnty. Bd. of Educ., 608 S.E.2d 399, 411 (N.C. Ct. App. 2005) (citation omitted). North Carolina courts are split on whether public official immunity applies to intentional torts and generally hold that the immunity is overcome only in those intentional torts where "malice encompasses intent." Maney v. Fealy, 69 F. Supp. 3d 553, 564-65 (M.D.N.C. 2014). This reading of the case law in North Carolina reconciles the fact that North Carolina courts at times do apply public official immunity to intentional torts and squares that fact with the underlying justification for the doctrine: "As long as a public officer lawfully exercises the judgment and discretion with which he is invested by virtue of his office, keeps within the scope of his official authority, and acts without malice or corruption, he is

protected from liability." Smith v. State, 222 S.E.2d 412, 430 (N.C. 1976).

Norris alleges in his complaint that at all relevant times, Defendants "were acting within the course and scope of their employment." (Doc. 23 at 5.) Consequently, any allegations that bear on the inapplicability of public official immunity must concern malice, corruption, bad faith, or willfulness. See Smith, 608 S.E.2d at 411. In his complaint, Norris alleges that Defendants "acted maliciously" in beating him, and their conduct was "in bad faith, with malicious purposes, or a willful or wanton disregard of human rights or safety." (Doc. 23 ¶¶ 25-26.) Although "conclusory statements" in support of "[t]hreadbare recitals of the elements of a cause of action" are not sufficient to state a claim, see Iqbal, 556 U.S. at 678, Norris has alleged that Defendants acted willfully in using excessive force. (Doc. 31 at 7; Smith, 608 S.E.2d at 411.) This allegation is sufficient at the pleading stage to overcome public official immunity as to the intentional tort claims of IIED (Count Four) and assault and battery (Count Five).

However, in relation to his claim for negligent execution of official duties (Count Six), Norris has not sufficiently alleged that Defendants' actions were "corrupt," "malicious," "in bad faith," or "willful and deliberate." (Doc. 23 ¶¶ 57-66; see Smith, 608 S.E.2d at 411.) Norris's allegations related to Count Six

sound in negligence. (See Doc. 23 ¶¶ 57-66.) Public official immunity "protects public officials from individual liability for negligence" in the performance of their duties, absent malicious or corrupt conduct. See Campbell, 576 S.E.2d at 730; Gonzalez v. City of Charlotte, No. 3:23-cv-403, 2023 WL 8421114, at *2 (W.D.N.C. Dec. 4, 2023) ("[T]o the extent that Plaintiff has sued . . . for claims sounding in negligence only, Defendants enjoy public official immunity from these claims."). Norris claims that Defendants breached their "duty to follow the policies created by the Sanford Police Department." (Doc. 23 ¶¶ 57-59.) Norris's allegations of malice and corruption in fabricating the assault charge do not relate to this alleged breach of a duty in negligence. Thus, Defendants' motion to dismiss Norris's claim of negligent execution of official duties (Count Six) will be granted.

**H. City of Sanford's Liability**

Norris asserts various state law claims against the City of Sanford ("the City"), including for false imprisonment (Count Three), IIED (Count Four), assault and battery (Count Five), negligent execution of official duties (Count Six), and negligent hiring training, training, and supervision (Count Seven). Norris specifically alleges Claims Four, Five, and Six under a theory of respondeat superior. (Doc. 23 ¶ 48, 56, 64.) In response, the City asserts governmental immunity. (Doc. 27 at 19-20.) Although the City acknowledges that immunity can be waived through the

purchase of insurance, it argues that Norris's complaint did not allege such a waiver and his claims are therefore subject to dismissal. (Doc. 27 at 20.) Norris argues in response that a plaintiff is not required at the pleading stage to prove waiver (Doc. 31 at 9), and the City counters that the case law supports its position (Doc. 34 at 4).

In North Carolina, a municipality is "immune from liability for the torts of its officers and employees 'if the torts are committed while they are performing a governmental function.'" Clayton v. Branson, 570 S.E.2d 253, 256-57 (N.C. Ct. App. 2002) (quoting Williams v. Holsclaw, 495 S.E.2d 166, 168 (N.C. Ct. App. 1998)). This applies to claims using a respondeat superior theory of liability. Hart v. Brienza, 784 S.E.2d 211, 217 (N.C. Ct. App. 2016). "A municipality may waive immunity, however, by purchasing liability insurance or by joining a local government risk pool." Williams, 495 S.E.2d at 168 (citing N.C. Gen. Stat. § 160A-485 (1994); Combs v. Town of Belhaven, 415 S.E.2d 91, 92 (N.C. Ct. App. 1992)). "[T]o state a claim relying on this waiver of immunity, a plaintiff must allege in the complaint that the governmental immunity has been waived through the purchase of insurance." Turner v. Randolph Cnty., 912 F. Supp. 182, 187 (M.D.N.C. 1995) (citing Gunter v. Anders, 441 S.E.2d 167, on reh'g, 444 S.E.2d 685 (1994)).

Here, Norris's complaint does not allege that the City waived

its immunity through the purchase of insurance. (See generally Doc. 23.) Accordingly, Norris has not stated claims "relying on this waiver of immunity," and all his claims against the City (Counts Three, Four, Five, Six, and Seven) will be dismissed. See, e.g., Turner, 912 F. Supp. at 187; Oakwood Acceptance Corp., LLC v. Massengill, 590 S.E.2d 412, 422 (N.C. Ct. App. 2004) (upholding the dismissal of a claim against a municipal defendant because "the complaint in this case does not include any allegations that the County purchased liability insurance or otherwise waived its immunity"). Because the City of Sanford does not deny that it may have had insurance such that this pleading is possibly subject to cure, the court will dismiss these claims without prejudice.

## III. CONCLUSION

For the reasons stated,

IT IS ORDERED that Defendants' motion to dismiss the amended complaint (Doc. 26) is GRANTED as to Count Three (false imprisonment) and Count Six (negligent execution of official duties), and those claims against all Defendants are DISMISSED WITH PREJUDICE. The motion is also GRANTED as to Counts Four, Five, and Seven against Defendant City of Sanford, and those claims are DISMISSED WITHOUT PREJUDICE. In all other respects, the motion is DENIED.

/s/ Thomas D. Schroeder
United States District Judge

November 13, 2026